**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| VINCENT B. RANDLES,<br><br>      Plaintiff,<br><br>vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY d/b/a METLIFE, CLAIMS ADMINISTRATOR AND/OR TRUSTEE OF THE QUAKER FOOD & BEVERAGE COMPANY EMPLOYEE BENEFIT PLAN,<br><br>      Defendant,<br><br>and concerning<br><br>CONNIE MOLITOR,<br><br>      Interpleader Joined Party. | No. C04-99-LRR<br><br><br><br>**ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

_____

**TABLE OF CONTENTS**

I.  INTRODUCTION AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . .  2

II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

III.  STANDARD FOR ISSUING A DECLARATORY JUDGMENT . . . . . . . . .  5

IV.  LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
    A.  Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
    B.  Preemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
        1.  General concepts of preemption . . . . . . . . . . . . . . . . . . . . . . .  8
        2.  ERISA preemption of state law and application of federal common
            law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## *I. INTRODUCTION AND PROCEDURAL BACKGROUND*

In this case, Plaintiff Vincent B. Randles ("Randles") seeks a declaratory judgment that he is entitled to the proceeds of Anne M. Molitor's ("Molitor") life insurance policy under the Quaker Food & Beverage Company Employee Benefit Plan (the "Plan"). The Plan is sponsored by Molitor's employer, Quaker Food & Beverage Company ("Quaker") and administered by Defendant Metropolitan Life Insurance Company d/b/a MetLife ("MetLife"). The specific matter before the court is Plaintiff's Motion for Summary Judgment (docket no. 19). The motion is resisted.

On July 1, 2004, Randles filed a Petition in Equity in the Iowa District Court in and for Linn County, seeking a declaratory judgment that he is entitled to the proceeds of Molitor's life insurance policy and asking that judgment be entered in his favor against MetLife in the amount of $52,000 for such life insurance benefits under the Plan, plus interest as provided by law, attorneys' fees, court costs and such other relief as may be equitable in the circumstances.

On August 2, 2004, MetLife removed the case to this court. MetLife invokes the jurisdiction of the federal courts pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) alleging Randles' claim for benefits arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 *et seq.*

On October 13, 2004, MetLife filed an Answer and Interpleader, joining three parties with an interest in this litigation: (1) Joseph G. Molitor, Molitor's brother and executor of Molitor's estate; (2) Geraldine Stubbe Molitor, Molitor's mother; and (3) Connie Molitor, Molitor's sister (jointly, "Interpleaders"). MetLife admits it has not paid the proceeds of Molitor's life insurance policy to any person and states it will pay benefits

in the amount of $52,000 plus interest, as provided by law, to whomever the court determines has a valid claim to the benefits.

On October 21, 2004, Randles filed an Answer to MetLife's Interpleader. On December 6, 2004, Interpleaders filed their Answer to MetLife's Interpleader.

On December 7, 2004, Randles filed the pending Motion for Summary Judgment, contending he is entitled to judgment as a matter of law because Molitor intended Randles to be the recipient of her life insurance proceeds and she attempted to effectuate the change by taking the positive action of filling out a Designation of Beneficiary form naming Randles as the primary beneficiary, although she failed to sign and date the form. Therefore, Randles contends, pursuant to the federal common law doctrine of substantial compliance, and in order to actualize Molitor's intent, he is entitled to receive the proceeds of Molitor's life insurance policy as a matter of law.

On December 30, 2004, Interpleaders resisted Randles' Motion for Summary Judgment. On January 5, 2005, Randles replied to Interpleaders' Statement of Material Facts.

The court held a telephonic hearing on Randles' Motion on May 25, 2005. Randles attended personally and with his attorney, Jeffrey Tronvold. Attorney J Helton appeared for MetLife. Attorneys Eugene Kopecky and Larry Thorson appeared for Interpleaders. At the hearing, the parties agreed the only remaining interested parties are Randles and Connie Molitor because only those two individuals have potentially been designated as beneficiaries of Molitor's life insurance policy. Thus, the court ordered the caption to be changed to its current form. The court orally denied Plaintiff's Motion for Summary Judgment and indicated this written ruling would follow.

## II. FACTUAL BACKGROUND[1]

Molitor became employed at Quaker on August 21, 1972. Molitor participated in a group life insurance policy through Quaker and, on April 1, 1973, she designated her sister, Connie Molitor, as the beneficiary of her life insurance policy. Quaker's corporate office in Chicago, Illinois, began processing all insurance benefits and beneficiary designations in about 1994.[2] Quaker's corporate office documentation indicates Connie Molitor remained the beneficiary of record from 1994 through March 28, 2002. On March 28, 2002, MetLife received an unsigned, undated Designation of Beneficiary form designating Randles as the primary beneficiary of 100% of the proceeds and Joseph Molitor as the contingent beneficiary of 100% of the proceeds. The information on the March 28, 2002 Designation of Beneficiary form was entered into Quaker's computer system on April 3, 2002, by the Quaker Employee Administration Center (the "QEAC").[3] The QEAC erroneously entered both Randles and Joseph Molitor as primary beneficiaries each receiving 100% of the proceeds, for a total of 200%.

Molitor died on May 20, 2003, from carbon monoxide poisoning. At Molitor's death, her life insurance policy was valued at $52,000. On May 22, 2003, Joseph Molitor was appointed administrator of Molitor's estate. On or about July 22, 2003, MetLife notified Randles and Joseph Molitor they were beneficiaries of Molitor's life insurance policy. MetLife mailed claim forms to Randles and Joseph Molitor. Both Randles and

---

[1] The factual background consists of the undisputed material facts submitted by the parties.

[2] The record is unclear as to who processed the insurance benefits and beneficiary designations prior to 1994.

[3] MetLife is only the claim administrator of the Plan. Quaker is the agent who maintains and updates Designation of Beneficiary forms.

Joseph Molitor filed "Beneficiary's Life Insurance Claim Statement" forms: Joseph Molitor made his claim for benefits on July 24, 2003, and Randles made his claim for benefits on July 25, 2003. On August 22, 2003, MetLife denied both claims. MetLife's internal correspondence indicates that on August 14, 2003, MetLife realized the Designation of Beneficiary form received on March 28, 2002, regarding Molitor's life insurance policy was neither signed nor dated and, therefore, the form was not valid. MetLife's internal correspondence further states there were no prior beneficiary designations on file, so payment should be made "per facility" or to Molitor's estate.[4] Joseph Molitor and Randles each filled out two additional forms regarding Molitor's life insurance policy: "Metropolitan Life Insurance Company Life Insurance Claim Form Claimant's Statement" and "Metropolitan Life Insurance Company Claimant's Affidavit." On September 2, 2003, Joseph Molitor filled out the forms; on September 12, 2003, Randles filled them out. Also on September 12, 2003, Randles wrote a letter to MetLife, asking for administrative review of MetLife's denial of benefits. On September 23, 2003, MetLife upheld its earlier decision to deny benefits.

The Quaker Oats Group Life Insurance Policy provides, in pertinent part, as follows: "You may change the Beneficiary at any time by filing a new form with the Employer. You do not need the consent of the Beneficiary to make a change. When the Employer receives a form changing the Beneficiary, the change will take effect as of the date you signed it."

### *III. STANDARD FOR ISSUING A DECLARATORY JUDGMENT*

The United States Code provides for a court to issue a declaratory judgment as

---

[4] Randles and Interpleaders agree MetLife's records were incorrect and Quaker's subsequent investigation disclosed Molitor's prior designation of Connie Molitor as the beneficiary of Molitor's life insurance policy.

follows:

> In a case of actual controversy within its jurisdiction, [except in various circumstances which do not exist here], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Additionally, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." *Id.* § 2202. The declaratory judgment procedures initiated pursuant to 28 U.S.C. § 2201 must comply with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 57. The fact an alternate remedy may exist does not preclude a declaratory judgment where one is appropriate. *Id.* In this case, the "actual controversy" is a dispute regarding the correct beneficiary of Molitor's group life insurance policy. Therefore, the court is authorized to enter a declaratory judgment if it is appropriate. The court next turns to consider whether, as a matter of law, Randles is entitled to a declaratory judgment stating he is entitled to the proceeds of Molitor's life insurance policy.

## IV. LEGAL ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate only when the record, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Carter v. Ford Motor Co.,* 121 F.3d 1146, 1148 (8th Cir. 1997) (citing *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996)). An issue of material fact is genuine if it has a real basis

6

in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). A fact is material when it is a fact that "might affect the outcome of the suit under the governing law." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999). In considering a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Id.*

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 394 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and, by depositions, affidavits or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### B. Preemption

Randles and Interpleaders contend ERISA preempts any state law relating to an employer-sponsored life insurance policy. Furthermore, it is undisputed ERISA does not directly address the change of a beneficiary designation in an employer-sponsored life insurance policy. Therefore, the parties urge the court to apply the federal common law doctrine of substantial compliance to this case.

7

### *1. General concepts of preemption*

The Supremacy Clause of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "The purpose of Congress is the ultimate touchstone of preemption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). Congress may show its intent for federal law to preempt state law in three ways. First, state law is preempted where Congress expressly preempts state law in the statutory language. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990). "Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *Id.* at 78-79. Second, in the absence of explicit statutory language, federal law preempts state law where Congress intends federal regulation to exclusively occupy the field. *Id.* at 79.

> Such an intent may be inferred from a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."

*Id.* Third, state law is preempted to the extent it actually conflicts with federal law. *Id.* For example, the Supreme Court has found state law preempted by federal law "where it is impossible for a private party to comply with both state and federal requirements . . . or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

However, "'[s]tates traditionally have had great latitude under their police powers

to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.'" *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756, (1985) (internal quotation marks omitted)). There is a "presumption against federal preemption of state police powers." *Tow Operators Working to Protect Their Right to Operate on the Sts. of Kansas City v. City of Kansas City*, 338 F.3d 873, 876 (8th Cir. 2003) (citing *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 432-33 (2002)). The presumption that a state's police powers are not to be federally preempted may be overcome only upon a showing that preemption was the "'clear and manifest purpose of Congress.'" *Medtronic, Inc.*, 518 U.S. at 485 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "In the interest of avoiding unintended encroachment on the authority of the States, . . . a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find preemption." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

### 2. ERISA preemption of state law and application of federal common law

It is undisputed ERISA governs the Plan covering Molitor's group life insurance policy. ERISA preempts all state laws which "relate to" an employee benefit plan but which do not regulate the insurance industry as a whole. 29 U.S.C. § 1144(a). The Supreme Court has determined a suit by a beneficiary to recover benefits from an ERISA-governed plan "falls directly under § 502(a)(1)(B) of ERISA, [29 U.S.C. § 1132(a)(1)(B),] which provides an exclusive federal cause of action for resolution of such disputes." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63 (1987). Thus, ERISA preempts state law by Congress' explicit statement in the statutory language. *See English*, 496 U.S. at 78.

The court notes ERISA does not expressly govern a dispute between two or more

competing claimants for life insurance benefits in an employer-sponsored life insurance policy. *Equitable Life Assurance Soc'y of the United States v. Crysler*, 66 F.3d 944, 948 (8th Cir. 1995) (citing *Mohamed v. Kerr*, 53 F.3d 911, 913 (8th Cir. 1995); *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 13 (2d Cir. 1993) (noting ERISA is "silent on the matter of which party shall be deemed beneficiary among disputing claimants"); *Lyman Lumber Co. v. Hill*, 877 F.2d 692, 693 (8th Cir. 1989)). "[W]here there is no federal statutory law to apply in ERISA litigation, 'federal common law,' not state law, should be applied." *Reid v. Conn. Gen. Life Ins. Co.*, 17 F.3d 1092, 1098 (8th Cir. 1994) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987) (stating courts are to develop a "federal common law of rights and obligations under ERISA-regulated plans.")). Thus, "ERISA preemption makes the designation of plan beneficiaries and the determination of who is entitled to plan benefits questions of federal [common] law." *Equitable Life Assurance Soc'y of the United States*, 66 F.3d at 948.

In the case presently before the court, the Plan allowed Molitor to change the beneficiary of her life insurance policy: "You may change the Beneficiary at any time by filing a new form with the Employer. You do not need the consent of the Beneficiary to make a change. When the Employer receives a form changing the Beneficiary, the change will take effect as of the date you signed it." Pl. App. at 1; Interpleaders' App. at 1. Thus, to actually comply with the Plan's terms, Molitor must have provided signed and dated written notice of the change of beneficiary. However, it is undisputed Molitor did not sign and date the Designation of Beneficiary form. Therefore, the court must determine whether, pursuant to federal common law, Molitor's actions substantially complied with the Plan's requirements such that the court must give effect to her Designation of Beneficiary form and rule in favor of Randles.

The Eighth Circuit Court of Appeals has never directly addressed the federal

common law doctrine of substantial compliance and its application to competing beneficiary claims for an ERISA-governed life insurance policy.[5] However, at least two Circuit Courts of Appeals have applied the federal common law doctrine of substantial compliance in the context presently before the court, in which the policyholder technically failed to comply with the plan's requirements for changing the beneficiary of a life insurance policy. *See Davis v. Combes*, 294 F.3d 931, 940 (7th Cir. 2002) (applying the federal common law doctrine of substantial compliance to a claim regarding the designation of a beneficiary in an ERISA-governed plan where the policyholder failed to sign and date the "change of beneficiary" form); *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 558-62 (4th Cir. 1994) (same where the "change of beneficiary" form omitted the new beneficiary's name).

The Eighth Circuit Court of Appeals has held district courts "'may look to state law for guidance in developing federal common law. . . .'" *Equitable Life Assurance Soc'y of the United States*, 66 F.3d at 948-49 (quoting *Mohamed*, 53 F.3d at 913). In this case, there is no need for the court to look to state law for guidance because federal common law in this area already has been developed. The Fourth Circuit Court of Appeals adopted the following definition of the federal common law doctrine of substantial compliance in regards to a change of beneficiary in an ERISA-governed plan:

> Pursuant to federal common law, an insured substantially complies with the change of beneficiary provisions of an

---

[5] In *Equitable Life Assurance Society of the United States*, the Eighth Circuit Court of Appeals addressed a different legal issue regarding two competing benefit claimants which did not involve the federal common law doctrine of substantial compliance. 66 F.3d at 944. In that case, the Eighth Circuit Court of Appeals dealt with the issue of whether ERISA preempts a state law divorce decree granting to the policyholder's former wife the life insurance benefits at issue where the policyholder subsequently filed a form designating the policyholder's then-current wife as the beneficiary of the same policy. *Id.*

> ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.

*Phoenix Mut. Life Ins. Co.*, 30 F.3d at 564 (quotation omitted). Furthermore, the Fourth Circuit Court of Appeals distinguished substantial compliance from actual compliance in the following manner:

> By definition, substantial compliance is less than actual compliance. The point of the doctrine [of substantial compliance], whether found in federal or state law, is to give effect to an insured's intent to comply when that intent is evident. The insured decedent need not actually comply, but need only *substantially* comply with the change of beneficiary provisions of the policy to effectuate the desired change. A federal common law of substantial compliance requiring that an insured intend to change [her] beneficiary and that [she] take positive action to effectuate that intent furthers the purposes of ERISA without compromising the integrity of policies issued by plan sponsors.

*Id.* at 565 (emphasis in original).

In *Phoenix Mutual Life Insurance Co.*, the holder of the life insurance policy, Adams, filled out a "change of beneficiary" form but forgot to include the new beneficiary's name. *Id.* at 557. The company's financial accounting manager, Holcombe, had personal responsibility for some employees' benefits, including Adams', due to the confidentiality of some of the corporate division employees' salaries. *Id.* Holcombe received the form and noticed Adams had failed to include the name of the new beneficiary. *Id.* Two weeks later, Adams telephoned Holcombe to confirm the change in his policy and, at that time, Adams told Holcombe the name of the new beneficiary. *Id.* Adams' wife, the new beneficiary, recalled hearing Adams speak to someone on the

telephone regarding his "change of beneficiary" form. *Id.* During or immediately after the telephone call, Holcombe made a note to himself regarding the name of the new beneficiary. *Id.* Two months later, Holcombe left the company and, for some unknown reason, he did not make the necessary change to Adams' policy prior to leaving the company. *Id.* Holcombe took all of his papers and personal belongings with him when he left the company, including the note made during the telephone call with Adams. *Id.* Thus, Holcombe's replacement did not know of Adams' new beneficiary and did not change the policy either. *Id.* at 558. Adams died several months after Holcombe left the company. *Id.* at 557. The new financial accounting manager called Holcombe and asked whether Adams had attempted to change his life insurance policy beneficiary. *Id.* at 558. After reviewing his telephone notes, Holcombe stated he recalled Adams' phone call and the new beneficiary's name. *Id.* At some point, an employee of the company wrote in the new beneficiary's name on the "change of beneficiary" form Adams previously had filled out. *Id.* Based on the evidence presented, the Fourth Circuit Court of Appeals affirmed the district court's ruling that Adams had substantially complied with the plan's requirements because the failure to technically comply with the plan was Holcombe's fault rather than Adams'. *Id.* at 567-68.

The Seventh Circuit Court of Appeals also has addressed a change of beneficiary case in an ERISA-governed plan under the federal common law doctrine of substantial compliance. *Davis*, 294 F.3d at 941-42. In *Davis*, the holder of the life insurance policy filled out a "change of beneficiary" form in her own handwriting but failed to sign or date the form. *Id.* at 942. The Seventh Circuit Court of Appeals determined the evidence left the court "no doubt" about the policyholder's intent to change the beneficiary because of the following facts: (1) at the same time the policyholder attempted to change the policy at issue, she successfully changed two other life insurance policies to name the same

beneficiary; (2) she requested the "change of beneficiary" form from her employer and filled it out in her own handwriting; (3) she completed the form in its entirety, including an effective date, except for the signature and date lines; and (4) she delivered the form to the benefits coordinator, who accepted and processed the application as though it were complete. *Id.* Thus, the Seventh Circuit Court of Appeals opined the policyholder had substantially complied with the policy's requirements. *Id.*

In the case presently before the court, viewing the evidence in the light most favorable to Interpleaders, the non-moving party, the court finds there exist genuine issues of material fact regarding Molitor's intent to change the beneficiary of her life insurance policy and whether Molitor took positive action which is, for all practical purposes, similar to the action required by the Plan in order to effectuate any change in beneficiary. *See Phoenix Mut. Life Ins. Co.*, 30 F.3d at 565 (recognizing the issues of whether a beneficiary to a life insurance policy has been changed and whether the holder of a life insurance policy took steps to effectuate the change are questions of fact). Such fact questions are properly for the jury to decide. Therefore, the court finds Randles is not entitled to judgment as a matter of law. The court declines to enter a declaratory judgment at this stage in the proceedings.

## V. CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED** Plaintiff's Motion for Summary Judgment (docket no. 19) is DENIED. The matter shall proceed to trial by jury pursuant to the Scheduling Order.

**SO ORDERED.**

**DATED** this 25th day of May, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA